UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SCOTT JOHNSON,<br><br>      Plaintiff,<br>  v.<br><br>THOMAS W HARKER,<br><br>      Defendant. | CASE NO. 3:21-cv-05182-DGE<br><br>ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

## I  INTRODUCTION

This matter comes before the Court on Defendant's Motion for Summary Judgment. (Dkt. No. 11.)  Having considered the briefing of the parties and the remainder of the record, the Court DENIES Defendants motion for the reasons discussed herein.

## II  BACKGROUND

Plaintiff Scott Johnson began working at the Puget Sound Naval Shipyard (PSNS) in August 2003.  (Dkt. No. 12-3 at 7.)  After working as a rigger helper for fourteen months, Plaintiff served the rest of his tenure as a Crane Operator in the Lifting and Handling

1   Department, Rigger and Equipment Operations Division (Code 740).  (Dkt. No. 18-1 at 351–

2   352.)  In this capacity, Plaintiff operated portal, floating, and bridge cranes.  (Dkt. No. 12-2 at

3   53.)  As a Crane Operator, Plaintiff had to climb vertical ladders up to 60 feet tall to access the

4   crane cab.  Once inside, Plaintiff sat in a seat like a recliner with armrests and operated the crane

5   using joysticks on each side.  (*Id.* at 54.)

6       On February 17, 2017, Plaintiff suffered an injury while at work.  (Dkt. No. 12-3 at 7.)

7   As he threw trash away into a receptacle with a sliding lid, Plaintiff's left hand and wrist were

8   crushed between the drawer handle and a stationary piece of steel.  (*Id.* at 10.)  Plaintiff

9   underwent two surgeries in May and December 2017.  (Dkt. No. 12-18 at 3.)  Several months

10  later, Plaintiff's treating physician Margaret Jain, M.D. determined Plaintiff reached maximum

11  recovery but would suffer permanent limitations.  (*Id.*)  On June 19, 2018, Dr. Jain issued a

12  prognosis stating, "[i]t is my medical opinion that Mr. Johnson cannot do work which requires

13  forceful use of his left wrist, repetitive motion of the left wrist, use of grip strength more than 40

14  pounds at a given time, crawling, or [ladder] climbing."  (Dkt. No. 12-5 at 3.)

15      The Naval Branch Health Clinic Provider also issued Plaintiff a "Report of Work

16  Limitation" form on June 15, 2018.  (Dkt. No. 12-7 at 2.)  In general, in 2018, Defendant used

17  these forms to communicate an employee's physical limitations to their supervisor.  The

18  supervisor could then decide whether there is work available within the restrictions identified.

19  (Dkt. No. 18-1 at 260.)  Plaintiff's form included the following activity restrictions:  no

20  lifting/carrying or pushing/pulling over ten pounds with the left hand; no climbing vertical

21

22

23

24

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

ladders, scaffolds, or structures; no awkward left wrist positions; and seldom[1] use of the left hand for sustained gripping and repetitive grasp/release. (*Id.* at 4.)

On June 26, 2018, Plaintiff completed a form entitled "Request for Accommodation/Approval of Request for Accommodation." (Dkt. No. 12-6 at 2–3.) On this form, Plaintiff wrote he "can't operate cranes because of [his physical] limitations" and requested reassignment. (*Id.* at 2.) While Plaintiff sought accommodation, he performed a series of temporary light-duty assignments through the Injured Worker Program. (Dkt. No. 12-18 at 3–4.)

At some point in 2018, Plaintiff asked Dale Coyle, Superintendent Code 740, if he could use an ariel work platform (AWP) to access the crane cab. (Dkt. No. 18-1 at 372–374.) Mr. Coyle responded the Navy would be unable to do that but did not elaborate. (*Id.* at 374.) Plaintiff also discussed using a lift with Ken Bourbolis, the Crane Operator Manager, who similarly declined without elaboration. (*Id.* at 411.[2])

For the last five years, Ms. Tahnee Orcutt has served as a Reasonable Accommodation Specialist for Defendant. (Dkt. No. 12-2 at 10.) Although not involved directly with Plaintiff's case until May 2020 (Dkt. No. 18-1 at 270), Ms. Orcutt explained the Navy's general process for accommodations requests in 2018. Upon receiving a request for reassignment, an advisory team including resource managers, a human resources specialist, and reasonable accommodation

---

[1] "Seldom" is listed on the Report of Work Limitation as "1-10%," which Plaintiff characterizes as 48 minutes total per day. (Dkt. No. 12-7 at 2.) As Plaintiff provides no explanation, the Court presumes Plaintiff arrived at this figure by computing ten percent of eight hours.

[2] The Court notes the record appears to be missing parts of Plaintiff's deposition that are discussed in Plaintiff's response brief. Plaintiff cites Page 252 of his deposition in support of his assertion that he spoke to Ken Bourbolis, Crane Operator Manager. (Dkt. No. 18 at 4.) But this page of the deposition lacks Mr. Bourbolis' first name or his title—such information is only included in Plaintiff's response brief. (*See* Dkt. No. 18-1 at 411.)

specialist would meet to discuss whether an employee could be accommodated in their current position. (Dkt. No. 12-2 at 14.) This process reflected Defendant's outlook towards reassignment as an accommodation of last resort. Defendant tried to keep an employee requesting accommodation in their position, if at all possible. (*Id.* at 13.)

In a memorandum dated July 27, 2018, Superintendent, Code 740, Dale Coyle informed Plaintiff that an advisory team determined he could not perform all essential functions of the Crane Operator role. The memorandum stated:

> [A]fter assessing all of the information you have provided and using all resources available to the accommodation team, it has been determined that you cannot be accommodated in your current position at Puget Sound Naval Shipyard and Intermediate Maintenance Facility.

(Dkt. No. 18-1 at 38–39.) The memorandum also informed Plaintiff of his option to be considered for reassignment, which Plaintiff accepted on August 14, 2018. (Dkt. No. 12-8 at 2.) Plaintiff requested reassignment within the local commuting area for PSNS. (*Id.*)

Ms. Ellen Lukkasson, an Internal Placement Program manager, conducted the internal search for a position for Plaintiff, which continued from August 2018 to March 2020. (Dkt. No. 12-2 at 23–24, 34.) During this process, Ms. Lukkasson met with Plaintiff to review and enhance his resume more than once. (Dkt. Nos. 12-2 at 37; 12-3 at 25.) In accordance with PSNS policy, all open positions were sent to Ms. Lukkasson as an "admin request." (Dkt. No. 12-10 at 6.) Ms. Lukkasson kept a record of the available positions and noted those for which Plaintiff was qualified. (*Id.* at 7.) Ms. Lukkasson found Plaintiff qualified for the roles of Forklift Operator and Rigging Worker (Forklift Operator), which were recruiting for multiple vacancies.[3] (Dkt. Nos. 12-11 at 2, 4; 18-1 at 125, 143, 151–152.)

---

[3] Ms. Lukkasson's log shows three vacancies for the position of Forklift Operator opening on December 10, 2018 in Shop 75, Ship Inactivation & Dismantling. (Dkt. No. 18-1 at 125.) The

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

Defendant did not inform Plaintiff about any of these positions. (Dkt. No. 18-1 at 393.) Defendant decided Plaintiff could not perform the essential functions of either role and did not contact Plaintiff about their openings.

The Forklift Operator position description did not list requirements that expressly conflicted with Plaintiff's stated medical limitations (Dkt. No. 12-13 at 154–161), but the hiring manager, Carmon Gausepohl stated Plaintiff could not be reassigned to the position because "all of our workers are in and out of the dry-dock at times and climbing scaffolding and ladders throughout the day as well as in tight confined spaces at any given time." (*Id.* at 162.) Defendant argues, because of Plaintiff's ladder climbing restriction, Plaintiff could not perform all essential functions as a Forklift Operator. (Dkt. No. 19 at 3.) The Rigging Worker (Forklift Operator) position required a worker to lift 100 pounds and occasionally carry equipment that weighs up to 60 pounds as well as and perform work from ladders and platforms. (Dkt. No. 12-13 at 129.) Defendant argues, because of Plaintiff's ladder climbing and lifting restrictions, Plaintiff could not perform all essential functions as a Rigger Worker (Forklift Operator). (Dkt. No. 19 at 4.)

Defendant also entered Plaintiff in an external search for positions outside the shipyard but did not identify a position for which Plaintiff would be qualified. (Dkt. No. 12-18 at 5.)

On April 6, 2020, Plaintiff received a memorandum from Defendant notifying him that his request for reasonable accommodation had been denied for lack of a vacant, funded position to which he could be reassigned. (Dkt. No. 12-15 at 2–4.) On October 9, 2020, Mr. Kelvin

---

log shows seven vacancies for the position of Rigging Worker (Forklift Operator) opening February 5, 2020 and June 24, 2020, but Ms. Lukkasson did not find Plaintiff met the minimum qualifications. (Dkt. No. 18-1 at 143, 151.) This finding conflicts with her later finding when another vacancy for the same position opened on July 17, 2020, and Ms. Lukkasson found Plaintiff did in fact meet the minimal qualifications. (*Id.* at 152.)

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

Perez wrote a memorandum explaining his decision to remove Plaintiff from his position with PSNS. (Dkt. No. 12-16 at 2–5.) On October 13, 2020, Defendant terminated Plaintiff. (Dkt. No. 12-18 at 5.)

Plaintiff sued Defendant alleging it violated the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (Dkt. No. 1 at 5.) Plaintiff alleged Defendant breached its duty by "[d]enying him a reasonable accommodation of using a lift to reach the control booth of cranes;[4] [f]ailing to engage, in good faith, in interactive efforts to accommodate Plaintiff in his position of crane operator; [f]ailing to make a good faith effort to accommodate Plaintiff by reassignment; [and] [a]sserting [] the Defendant could not provide any reasonable accommodation in Plaintiff's job or in any position in the United States Navy that Plaintiff could have performed with or without accommodations without having made sufficient good faith efforts to accommodate him." (*Id.* at 5–6.)

### III  DISCUSSION

**A. Legal Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue

---

[4] In Plaintiff's deposition, he clarified that multiple allegations were untrue. Specifically, in the Complaint, it states Plaintiff used a lift to reach the control booth before Defendant issued a safety regulation prohibiting a worker from stepping from a lift onto another structure. (Dkt. No. 1 at 3.) But this sentence is *not* accurate because Plaintiff never used a lift after his injury. (Dkt. No. 12-3 at 17.)

of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Serv. Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Serv. Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B. Exhaustion**

Before suing under the Rehabilitation Act ("the Act"), an employee must exhaust their claim through an administrative proceeding. *Leno v. Dep't of Veterans Affs.*, 211 F. App'x 554, 556 (9th Cir. 2006). Federal employees may appeal to the Merit System Protection Board

(MSPB), a quasi-judicial government agency authorized to review certain adverse agency actions including removals. *Sloan v. West*, 140 F.3d 1255, 1258–59 (9th Cir. 1998).

MSPB also has pendent jurisdiction over discrimination claims related to the appealable adverse action, which is known as a "mixed case appeal." 29 C.F.R. § 1614.302. "A mixed case appeal is an appeal filed with the MSPB that alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of … disability[.]" 29 C.F.R. § 1614.302(a)(2). In mixed case appeals, the MSPB administrative law judge decides both the adverse action and discrimination claims on the merits. *Silveria v. Wilkie*, No. 18-CV-07327-EMC, 2020 WL 820377, at *5 (N.D. Cal. Feb. 19, 2020).

Plaintiff appealed his removal to the MSPB. On February 9, 2021, the ALJ held a videoconference hearing and Plaintiff appeared pro se. (Dkt. No. 12-2 at 4.) In prehearing submissions, Defendant and Plaintiff stipulated to several facts including "[Plaintiff's] physical limitations prevented him from safely and effectively performing all the essential functions of his crane operator position." (Dkt. No. 12-1 at 3; *see also* Dkt. No. 12-2 at 7.) The hearing transcript reflects no mention of the possibility of accommodating Plaintiff through an aerial work platform. (*See* Dkt. No. 12-2 at 2–81.) In his direct testimony, Plaintiff states, given his experience, he "find[s] it really difficult that [Defendant] couldn't find [him] any kind of position" and because of his "disability limitations" and age, it "feel[s] like [he is] getting pushed or forced into an earlier retirement than what [he] had planned." (*Id.* at 68.)

The ALJ first considered whether Defendant established Plaintiff's medical condition prevented him from being able to safely and efficiently perform the core duties of his position and whether a reasonable accommodation existed (apart from reassignment), which would enable him to do so. (Dkt. No. 12-18 at 6.) The ALJ found not only that Plaintiff's medical

condition prevented him from performing his duties safely and efficiently but also that Defendant "ha[d] established that there was no reasonable accommodation available that would have allowed [Plaintiff] to safely and efficiently perform[ed] the core duties of the crane operator position." (*Id.* at 6–7.)

The ALJ next considered Plaintiff's affirmative defense of disability discrimination. (*Id.* at 9.) She found, "[Plaintiff] has not identified any reasonable accommodation that may have permitted him to perform the essential functions of the crane operator position, and none is apparent from my review of the record." (*Id.* at 10.)

Defendant says Plaintiff failed to exhaust his reasonable accommodation claim for the use of an AWP. Defendant argues "the [ALJ] did not consider whether a reasonable accommodation could have been made to keep [Plaintiff] in his position as a crane operator" because Plaintiff "never pursued a claim concerning an accommodation for the crane operator position before the MSPB, which involved different facts and actors than his claim concerning reassignment." (Dkt. No. 19 at 7–8.) However, Defendant's argument is not entirely accurate because the ALJ specifically found Defendant "ha[d] established that there was no reasonable accommodation available that would have allowed [Plaintiff] to safely and efficiently perform[ed] the core duties of the crane operator position." (Dkt. No. 12-18 at 7.)

On the one hand, Defendant's position is tempting as it might be concluded Plaintiff never explicitly argued the failure to accommodate claim before the MSPB. Despite this temptation, however, the ALJ concluded the record raised sufficient facts about an alleged failure to accommodate such that the ALJ felt it necessary to make a specific finding. In this Court's view, when viewing the entire record in the light most favorable to the Plaintiff, and

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

considering the ALJ's specific finding, Plaintiff exhausted the failure accommodate issue before the ALJ and now appropriately challenges the ALJ's finding.

Accordingly, Plaintiff may challenge the ALJ's finding in his district court case even if he did not explicitly state an AWP was a possible accommodation during the MSPB proceeding. Plaintiff's specific allegation that he could have been accommodated using a lift directly challenges the ALJ's finding that no reasonable accommodation was available for Plaintiff as a crane operator and is properly before the district court at this time.

In addition, Plaintiff's AWP reasonable accommodation claim is related enough to his reassignment accommodation to fall within the district court's jurisdiction. The Court uses exhaustion through the EEOC as an analogous process to exhaustion via MSPB appeal as it is unaware of, and Defendant does not provide, comparable MSPB cases. In the Ninth Circuit, the district court's jurisdiction is limited to claims like or reasonably related to the allegations in the EEOC charge. *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990). A court "must construe the charge liberally" and "must inquire 'whether the original EEOC investigation would have encompassed the additional charges' made in the court complaint but not included in the EEOC charge itself." *Id.* (quoting *Green v. Los Angeles Cnty. Superintendent of Sch.*, 883 F.2d 1472, 1476 (9th Cir. 1989). In other words, jurisdiction extends to "the scope of an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination." *Id.* (internal quotation marks omitted).

*DeLaittre v. Berryhill* provides an example. No. C15-1905-RAJ, 2017 WL 6623059, at *1 (W.D. Wash. Dec. 28, 2017). In *DeLaittre,* a blind plaintiff complained he was denied reasonable accommodations to an assistant reader, a quiet office, and a parking pass, but the EEOC charge contained only the plaintiff's requests for an assistant reader and parking pass. *Id.*

at *7.  The district court held the plaintiff's claim for accommodation through a quiet office to be related enough that it fell within the court's jurisdiction.  *Id.*

In this case, Plaintiff requested to use an AWP and to be reassigned in 2018 (Dkt. Nos. 12-6 at 2; 18-1 at 372–374, 411), after Plaintiff was diagnosed with a permanent disability in his left wrist which precluded him from climbing ladders (Dkt. No. 12-5 at 23).  The facts clearly show Defendant considered reassignment only after considering accommodations for Plaintiff in his crane operator position.  (*See* Dkt. No. 12-2 at 13–14.)  Accordingly, both fall within the jurisdiction of the district court as Plaintiff properly exhausted his claims for reasonable accommodation in his position and through reassignment to a new position.[5]

### C. Failure to Accommodate Under the Rehabilitation Act

The Rehabilitation Act prohibits federal employers from discriminating against their employees based on disability.  *See* 29 U.S.C. § 791 *et seq*.  The Rehabilitation Act[6] "treats the failure to provide a reasonable accommodation as an act of discrimination if the employee is a 'qualified individual,' the employer receives adequate notice, and a reasonable accommodation is available that would not place an undue hardship on the operation of the [employer]." *Snapp*

---

[5] The Court distinguishes this case from those cited by Defendant, *Leno*, 211 F. App'x at 556, affirming *Leno v. Dep't of Veterans Affairs*, No. Civ. S-02-1460-FCD-PAN, 1 (E.D. Cal. Aug. 16, 2004).  In *Leno*, the plaintiff alleged the Department of Veterans Affairs denied her reasonable accommodations by not ending the use of cleaning product chemicals which caused her asthma attacks and not reassigning her to a new location.  The district court dismissed the plaintiff's allegation relating to the Department's failure to stop its use of cleaning products because the EEOC investigation did not mention the plaintiff's request to end use of the cleaning process and because it was untimely.  This fact pattern differs from the instant case because the ALJ considered whether Plaintiff could have been accommodated as a Crane Operator and found no reasonable accommodation available.  Thus, Plaintiff may challenge the ALJ's finding even though the appeal did not specifically address whether Plaintiff could use an AWP.
[6] In determining whether a violation of the Rehabilitation Act has occurred, the standards of the Americans with Disabilities Act apply.  29 U.S.C. § 791(g); *McLean v. Runyon*, 222 F.3d 1150, 1153 (9th Cir. 2000).

*v. United Transportation Union*, 889 F.3d 1088, 1095 (9th Cir. 2018). A qualified individual is a person who with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. 29 C.F.R. § 1630.2(m).

The parties do not dispute that Plaintiff is an individual with a disability nor do they dispute the Navy had notice of Plaintiff's request for accommodation.

1. The Mandatory Interactive Process for Reasonable Accommodations

Once an employer learns of the need for accommodation, that employer has a mandatory obligation to engage in an interactive process with the disabled employee to identify reasonable accommodations. 29 C.F.R. § 1630.2(o)(3); *Barnett v. U.S. Air Inc.*, 228 F.3d 1105, 1114 (9th Cir.2000), *vacated on other grounds*, 535 U.S. 391, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002). "The interactive process requires: (1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective." *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002). The Ninth Circuit has held that the duty to accommodate "is a continuing duty that is not exhausted by one effort." *Id.* at 1138 (internal quotation marks omitted).

"Recognizing the importance of the interactive process, the Ninth Circuit also held that if an employer fails to engage in good faith in the interactive process, the burden at the summary-judgment phase shifts to the employer to prove the unavailability of a reasonable accommodation." *Snapp*, 889 F.3d at 1095. Given the difficulty of proving a negative, it is unlikely "an employer will be able to establish on summary judgment the absence of a disputed fact as to this question." *Id.* at 1098–99 (quoting *Morton v. United Parcel Serv., Inc.*, 272 F.3d 1249, 1256 (9th Cir. 2001), *overruled on other grounds by Bates v. United Parcel Serv., Inc.*,

511 F.3d 974 (9th Cir. 2007)).  Thus, summary judgment for the employer is inappropriate where there is a genuine dispute that the employer engaged in the interactive process in good faith.  *Barnett*, 228 F.3d at 1116; *Morton*, 272 F.3d at 1257.

    2.  <u>There is Genuine Dispute over Whether Defendant Conducted the Interactive Process in Good Faith</u>

The Court finds there is a genuine dispute over whether Defendant engaged in the interactive process in good faith.  Plaintiff testified he raised his request to use an AWP to both Mr. Calfy and Mr. Bourbolis, but neither appear to have granted the idea consideration before both responded such an accommodation would not be available.  Defendant provides no evidence to contradict Plaintiff's testimony beyond the fact that Plaintiff did not request an AWP on his form submission.  Thus, it is not clear that Defendant considered Plaintiff's proposal in good faith under the Act.

The Court also finds there is a genuine dispute about whether Defendant conducted a good faith interactive process for Plaintiff's request for reassignment.  Even though Defendant identified two types of vacant positions for which Plaintiff was qualified, Defendant never informed Plaintiff about these positions nor discussed possible accommodations with him.

Plaintiff argues Defendant failed to complete an essential functions list or accommodations hardship review for these vacant positions.  In support of his argument, Plaintiff cites the lack of documentation in Plaintiff's Reasonable Accommodations file.  (Dkt. No. 18 at 8) (citing Dkt. No. 18-1 at 29–30.)  In reply, Defendant argues it "undertook the interactive process with [Plaintiff] in good faith" and did conduct essential functions reviews for the vacant positions, citing as support emails between Sal Calfy and Carmon Gausepohl (the hiring manager for one of the forklift operator positions) and a "response" showing Plaintiff's limitations conflicted with the job requirements.  (Dkt. No. 19 at 3–4.)  Specifically, Defendant

argues an essential function of the Forklift Operator position was climbing in and out of the drydock and the Rigger Worker (Forklift Operator) position required lifting up to 100 pounds and climbing vertical ladders.  (*Id.*)

Although these documents show the vacant forklift positions contained duties Plaintiff may be unable to perform without accommodation because of his disability, these documents do not show any conversations occurred about possible accommodations nor do they show any conversations with Plaintiff directly.  There is therefore a genuine dispute on whether Defendant explored possible accommodation through a good faith interactive process.  As a result, to prevail at the summary judgment stage, Defendant must establish no reasonable accommodation would be possible.

        3.    <u>Defendant Fails to Establish No Reasonable Accommodation Could Exist</u>

Defendant argues "[t]he employer should prevail on summary judgment if no reasonable accommodation was available, regardless of any deficiencies in the interactive process," because there is no stand alone claim for a failure to engage in an interactive process.  (Dkt. No. 19 at 6) (citing *Dark v. Curry Cnty.*, 451 F.3d 1078, 1088 (9th Cir. 2006)).  Although there is no stand alone claim, a consequence of failing to participate in the interactive process is that the burden shifts at summary judgment.  Defendant has not carried its burden to establish no reasonable accommodation would be possible in this case.

        i.    *AWP Accommodation*

The parties dispute whether Plaintiff request to use an AWP constitutes a reasonable accommodation.  Defendant claims Plaintiff has not carried his burden to prove a lift would enable him to perform essential functions of his position because he must use both hands to operate the crane even after he reached the cab and Plaintiff does not show he could operate

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

controls given his wrist movement limitations.[7] (Dkt. No. 19 at 9.) In his deposition, Plaintiff stated:

> I believe that I more than likely would have [been able to continue using both hands to operate the crane]. Until I tried it, I really cannot give you a true answer because I don't know what the outcome would be. There's not that much wrist movement involved. It's not like I've got levers that are [three] feet tall and I've got to push them [three] feet forward and [three] feet back.

(Dkt. No. 12-3 at 13.)

Because neither party establishes whether Plaintiff could operate controls in the crane booth, the Court considers the facts in a light most favorable to Plaintiff and finds a dispute of fact as to whether Plaintiff could operate the controls once arriving in the booth via AWP.

Defendant argues Plaintiff's request was unreasonable because it would pose an undue burden and direct threat given that "[s]tepping from a lift to a crane platform is prohibited at the Shipyard" and Plaintiff's inability to use ladders would prevent him from accessing the escape route. (Dkt. No. 11 at 12.) On the other hand, Plaintiff argues Defendant does not impose a blanket prohibition on stepping from lifts to crane platforms because other workers in other departments use AWPs and workers routinely use them to perform crane maintenance. (Dkt. No. 18 at 3) (citing Dkt. No. 18-1 at 375–377). Plaintiff further argues Defendant's concern for emergency escape is the "kind of hypothetical excuse [that] has been soundly rejected by the Court as a basis for an assertion of undue hardship" without a showing of reasonable probability of substantial harm. (*Id.* at 13) (citing *Mantolete v. Bolger*, 767 F.2d 1416, 1422 (9th Cir. 1985),

---

[7] Defendant points to multiple points in the records where Plaintiff previously stipulated his physical limitations prevented him from being a crane operator. (Dkt. No. 19 at 9) (citing Dkt. Nos. 12-6 at 2; 12-1 at 3; 12-2 at 69). But the Court finds this evidence does not cancel out Plaintiff's later statements because, while Plaintiff admits he cannot be a crane operator, one could read such statements as meaning Plaintiff could not be a crane operator *without accommodation*. Accordingly, his stipulations would not address whether he could serve as a crane operator, *with reasonable accommodation.*

*as amended* (Aug. 27, 1985)). Although Defendant's concern for safety raises a compelling issue, the Court agrees the facts are in dispute about whether Defendant's prohibition would extend to Plaintiff and the level of risk posed by lack of access to an escape route.

Defendant also argues allowing Plaintiff to use a lift would pose an undue hardship because it would require other employees to take time to operate the lift at the beginning and end of Plaintiff's shift. (Dkt. No. 19 at 8–9.) Plaintiff estimates the process would take five minutes but admits it could take up to an hour. (Dkt. No. 18-1 at 377–379.) Because of this factual discrepancy, the Court cannot determine, as a matter of law, whether asking another employee to operate the lift constitutes an undue burden on operational efficiency.

    ii.    *Reassignment to a Vacant Position*

Plaintiff argues he should have been assigned to one of the vacant Forklift Operator or Rigging Worker (Forklift Operator) jobs because the positions descriptions do not list any functions that conflict with Plaintiff's medical limitations. (Dkt. No. 18 at 19.)

On the other hand, Defendant argues,

> While the [Forklift Operator] position description does not list anything specific vis-à-vis [Plaintiff's] stated medical limitations, such as how much weight an operator must be able to lift or that the job requires climbing, the incumbent must be able to take on work assignments other than just operating the forklift, including aspects of ship dismantling.

(Dkt. No. 19 at 2–3.) Defendant points to an email from Carmon Gausepohl, the hiring manager, which states Plaintiff could not be accommodated because he cannot climb ladders and the "workers are in and out of the dry-dock at times and climbing scaffolding and ladders throughout the day as well as in tight confined spaces at any given time." (Dkt. No. 12-13 at 162.)

For the Rigging Worker (Forklift Operator) position, Defendant points out Plaintiff is incorrect, and the job description conflicts with Plaintiff's physical limitations. Indeed, the job

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

description says the worker "[m]ust be able to lift 100 lbs and occasionally carry equipment that weighs up to 60 pounds. . . [and] climb vertical ladders[,]" both of which conflict with Plaintiff's medical limitations. (Dkt. No. 12-13 at 129.)

Notwithstanding this evidence, Defendant has not shown it considered but could not identify any reasonable accommodation, which would have allowed Plaintiff to perform in either vacancy. Thus, there is a dispute of fact as to whether Plaintiff would be unable to perform the duties of the Forklift Operator and Rigging Worker (Forklift Operator) positions with reasonable accommodation, and summary judgment is inappropriate at this point in the litigation.

## IV   CONCLUSION

Accordingly, and having considered Defendant's motion, the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Defendant's Motion for Summary Judgment (Dkt. No. 11) is DENIED.

Dated this 28th day of October 2022.

David G. Estudillo
United States District Judge